### POST *v.* SIMMONS *et al.*

*(Supreme Court, General Term, First Department. May 18, 1888.)*

JUDGMENT—BY DEFAULT—REOPENING.

Where it appears that none of defendant's rights have been impaired, but that every right that he could possibly establish on a trial has been carefully preserved in an interlocutory decree, a judgment by default will not be opened.

Appeal from an order denying a motion to open defendants' default.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Treadwell Cleveland*, for appellant. *J. Langdon Ward*, for respondent.

VAN BRUNT, P. J. The courts have become so very indulgent in the matter of opening defaults that the taking of a default seems to have become a favorable method of obtaining delay, when all other devices have failed; as, by permitting a default to be taken, no risk of its being held seems to be run. This tendency, it appears to us, should be checked, and a limit placed upon the granting these applications. The favorite ground urged in favor of an application to open defaults which have been suffered because, in many instances, of the gross negligence of the attorney, is that the client should not be made to suffer because of the negligence of his attorney. This plea seems to have been altogether too often successful, because in giving effect to it the

court appears to have overlooked the fact that, by the additional delay thus suffered, the opposite party is seriously interfered with in the enforcement of his rights, and thus he has to pay the penalty for the negligence of the attorney of his opponent.   In no other calling in life does the negligence of an agent relieve the principal from the consequences naturally flowing therefrom, and neither in legal proceedings should this plea prevail, unless it is made plainly to appear that the party in default has some rights which will be impaired, and great injustice will be done, and the opposite party can be fully indemnified.   Upon an examination of the record upon this appeal, it appears that not only have no rights of the defendants been impaired, but every right which they could possibly establish upon a trial has been carefully preserved in the interlocutory decree.   The complaint which seems to be most seriously urged is that upon a trial the defendants could have disproved an allegation in the complaint of bad faith on their part, which was denied in the answer, and to support which the plaintiff offered no evidence, and in respect to which no finding was made.   It seems to us very problematical that the court upon the trial would have wasted its time in taking proof of the good faith of the defendants, when no attempt to establish bad faith had been made.   To do so would reverse all the principles governing the trial of issues.   The claim that the plan of organization, as contemplated in the agreement, did not cover reorganization by foreclosure only, does not seem to have any foundation in the terms of this agreement.   The agreement between the stockholders and the reorganization committee, after reciting the facts making reorganization necessary, and the fact that a committee had been appointed by the stockholders to prepare a plan and devise a means for a reorganization, recites that such committee has prepared the plan, which then follows; and the parties to the agreement, in consideration of the premises and the covenants and agreements thereinafter contained, agree as follows:   "*First.* That the parties of the first part [stockholders] will deposit in the trust company their certificates of stock, subject to the order of the reorganization committee, to be used in carrying out the scheme of reorganization thereinabove set forth, and pay to said trust company, subject to the same order, ten cents for each share of said stock. *Second.* Each of the parties of the first part thereby grants to the said reorganization committee the fullest powers to manage, etc., by legal proceedings or otherwise, the plan for reorganization in said agreement set forth, and from time to time perfect, modify, and carry out such details of the principles of such reorganization as in the judgment of said committee may be advisable." It is clear that the powers thus conferred are nothing more than to carry out the plan of reorganization proposed, with only a power of modification in detail, and not in principle.   The fourth paragraph of the agreeement, in which the committee accept the trust, is entirely in harmony with this view.   The parties of the second part (the committee) thereby agree that the stock and cash deposited shall be used by them only under the powers conferred upon them by this agreement, and only in furtherance of the general scheme for a reorganization set forth in said agreement.   This acceptance is an acceptance under the general scheme of reorganization proposed, and clearly bound the committee to carry on the reoganization upon the general scheme therein proposed.

Now, let us see what the plan proposed was.   It seems to be as follows: *First,* that a reorganization committee be appointed; *second,* that the committee should use all money and securities deposited with them for the general purposes of reorganization of said company, and as thereinafter provided; *third,* that each stockholder should make certain payments; *fourth,* that, as soon as a number sufficient to give reasonable assurance of success should have assented to the plan of reorganization, proceedings should be taken for the foreclosure of the mortgage now upon the property of the company, and a sale of such property; *fifth,* that at such sale the property should be

purchased by the said committee; *sixth*, that immediately after sale the committee should proceed to organize a new company; *seventh*, that the committee should convey the property to the new company; and then follows provision for the issuance and distribution of the stock and bonds of the new company. It seems clear, therefore, that the plan proposed contemplated reorganization by foreclosure, and nothing else, and that the power to perfect, modify, and carry out such details of the principles of such reorganization, as in the judgment of such committee might seem advisable, gave no power whatever to change the principle of reorganization proposed by such plan, viz., foreclosure. If there was any doubt upon this subject, the next paragraph in section second of the agreement, which reads as follows, sets the matter entirely at rest: "The said committee is hereby authorized to make such alteration or modification of said plan for reorganization as two out of three of the said committee shall, by an instrument in writing under their hands, duly acknowledged and deposited with the said Knickerbocker Trust Company, declare to be, in their opinion, for the best interest of the parties of the first part." Here is conferred an authority to alter and modify the plan, and a designation of how this authority is to be exercised. If by this provision a power to alter and modify was conferred, the method was designated, and the power could be exercised in no other way so as to bind all, even if such alteration or modification was assented to by all but one of the persons executing the agreement. The money and stock deposited was subject to no contingencies except those arising from the plan of reorganization contained in the agreement, which was to be, beyond question, by foreclosure, or from this plan modified and altered in such manner as two out of three of the committee should by an instrument in writing, under their hands, duly acknowledged and deposited with said trust company, declare to be in their opinion for the best interests of the stockholders, etc. We cannot find that it is anywhere averred that any such modification was ever signed, acknowledged, or deposited, as required by the agreement, and therefore the committee were bound to act according to the provisions of the original plan, and to reorganize by means of a foreclosure; and only in this way could they acquire any rights over the money and stock deposited by the plaintiff and those represented by him. The ninth paragraph of the answer alleges a reorganization upon a different plan, which was for the best interests of the stockholders, and which has been assented to by all the stockholders, with the exception of those represented by the plaintiff; but it is nowhere claimed that the provisions of the original agreement in respect to change in plan have been complied with, and therefore the plaintiff is in no manner bound by their action. It seems, therefore, upon the face of the pleadings, that the plaintiff is entitled to a return of the stock, and an account of the money deposited, and this is all that has been provided for by the interlocutory decree. The allegation in the answer of the defendant that the balance of the money unexpended by them is not in their possession, but in the possession of the Knickerbocker Trust Company, seems to be entirely irrelevant, as, even if the money is deposited in the trust company, it is subject to the order of the defendants, and can be drawn out only by them. No right of the defendants having in any manner been impaired or infringed upon by the decree entered herein, the default should not be opened. Order appealed from affirmed, with costs.

BRADY and DANIELS, JJ., concur.